UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| BRYAN F., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:20-cv-0055-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## <u>INTRODUCTION</u>

Plaintiff Bryan F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply brief. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed his application for DIB on March 6, 2014 and his application for SSI on March 13, 2014, alleging disability beginning December 30, 2015 (the disability onset date), due to: "(1) Bipolar; (2) Mood swings; (3) Depression; (4) Anxiety; (5) Panic attacks; (6) Nerve damage to right arm: (7) Unable to lift over 5 lbs; (8) Hard to grip with right hand; and (9)

Asthma." Transcript ("Tr.") 192-198, 205-11, 219. The claims were denied initially on July 14, 2014, after which Plaintiff filed a written request for hearing. Tr. 1401. *Id*. On August 1, 2016, Administrative Law Judge Stephen Cordovani ("the ALJ") held a hearing in Buffalo, New York. The ALJ issued an unfavorable decision on June 8, 2016, which was ultimately appealed to the United States District Court for the Western of New York and remanded by stipulation between the parties on April 23, 2018. Tr. 1543-44.

By Order dated August 15, 2018, the Appeals Council ordered the ALJ to offer Plaintiff a new hearing. Tr. 1402, 1545-1551. Specifically, the ALJ was ordered to: give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue and provide rationale, with specific references to evidence of record, in support of assessed limitations; further evaluate the medical opinion evidence pursuant to the provisions of 20 CFR 404.1527 and 416.927, including the opinion of state agency review psychologist, H. Tzetzo ("Dr. Tzetzo"), and explain the weight given to such opinion evidence; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base, including identifying and resolving any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p). Tr. 1402 (citing Tr. 1545-1551).

Thereafter, on August 26, 2019, Plaintiff appeared and testified at a second hearing held in Buffalo, New York, where he was represented by Kelly Laga, an attorney. Tr. 1402. Stephen E. Cosgrove, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. On September 18, 2019, the ALJ again issued an unfavorable decision (Tr. 1402-22), which was appealed directly to this Court.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 18, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012;

2. The claimant has not engaged in substantial gainful activity since September 27, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: obesity; asthma; myofascial pain; right elbow pain with remote history of fracture and current history of ulnar neuropathy with associated hand weakness; cervical spine disc degeneration; and mental impairments variously characterized as bipolar disorder, depression, anxiety, and drug abuse in remission (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b))[1] except he [c]an continuously lift up to 10 pounds; can occasionally carry up to 20 pounds and continuously carry 10 pounds. He can sit for 5 hours continuously and eight hours total in a workday. He can stand 2 hours continuously and 4 hours total during a workday. He can walk 3 hours continuously and 4 hours total during a workday. He can perform occasional overhead reaching with frequent reaching otherwise and can frequently handle with the right (dominant) hand and occasional finger and feel with the right (dominant) hand. He is limited to occasional pushing and pulling but frequent climbing of ramps and stairs, stooping, kneeling, crouching, crawling, and squatting. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance on uneven terrain. He cannot engage in work around unprotected heights but can occasionally work around moving mechanical parts and with occasional driving. He cannot be exposed to extreme heat, cold, wetness, or humidity. He can tolerate frequent vibration and moderate noise exposure. He can occasionally understand, remember and carry out complex instructions and tasks. The claimant further could perform occasional independent decision-making and he could occasionally interact with supervisors and engage in brief and superficial contact with co-workers and the general public. I note that brief and superficial contact with co-workers is defined as the ability to work in close proximity to co-workers but essential job functions would not require team, tandem, or co-dependent work activity. Brief and superficial contact with the general public would mean the ability to work in proximity to the general public but there would be no or only incidental direct contact with no interaction with the public required as part of the essential functions of the job;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on January 26, 1972 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 27, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 1402-22.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on March 6, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 1422. The ALJ also determined that based on the application for supplemental security benefits protectively filed on March 13, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff essentially asserts a single point of error. Plaintiff argues that the ALJ failed to reconcile significant limitations in the opinions of consultative examiners Stephen Farmer, Psy.D. ("Dr. Farmer), and Nikita Dave, M.D. ("Dr. Dave") (Tr. 2204-2214; 2216-2222), despite assigning said opinions significant weight. *See* ECF No. 7-1 at 15-19. Specifically, Plaintiff argues that the ALJ should have incorporated additional pace-related restrictions into the RFC based on Dr. Farmer's assessment and failed to resolve the conflict between the RFC and the lifting restriction assessed by Dr. Dave. *See id*. The Commissioner argues in response that the ALJ properly relied on the opinion of Dr. Farmer and reasonably credited the lifting limitations in the opinion of treating neurologist Mohammad Samie, M.D. ("Dr. Samie"), over those in Dr. Dave's opinion. *See* ECF No. 8-1 at 8-12.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ properly evaluated the medical opinion evidence and reasonably found that Plaintiff had the RFC for a range of light work and could perform work that exists in significant numbers in the national economy. Accordingly, substantial evidence supports the ALJ's conclusions, and the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697

7

F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinions, as well as the other evidence of record, when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Plaintiff first argues that the ALJ failed to incorporate pace limitations assessed by Dr. Farmer into the mental RFC despite giving the opinion significant weight. *See* ECF No. 7-1 at 16-17. However, Dr. Farmer did not describe any specific work-related limitations in pace in his December 2018 psychiatric evaluation form, or elsewhere. *See* Tr. 2220-2221. Plaintiff points to Dr. Farmer's vague statement on the check-the-box form that "maintaining pace and self-managing are mildly to moderately affected by impairment" and speculates that pace and self-managing limitations could lead to Plaintiff being off task at work. *See* ECF No. 7-1 at 16 (citing Tr. 2221). However, Plaintiff's speculation is inconsistent with the detailed opinion Dr. Farmer provided in his narrative report. *See* Tr. 2218. Dr. Farmer expressly opined that Plaintiff had no limitation with sustaining concentration or performing a task at a consistent pace, or with sustaining an ordinary routine and regular attendance at work. Because Dr. Farmer did not identify any work-related pace limitations, and indeed opined that Plaintiff had no limitation for performing tasks at a consistent pace, the ALJ reasonably did not include any pace-related limitations in the RFC.

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's mental RFC finding. For example, the ALJ reasonably gave significant weight to the mental RFC opinion of Dr. Tzetzo. Tr. 1404-05. Dr. Tzetzo completed a review of the record on July 9, 2014 and opined that Plaintiff had only moderate limitations for understanding, remembering, and carrying out detailed instructions and could handle simple work, ordinary levels of supervision, and brief and superficial contact with the public. Tr. 97-98, 102-103. As the ALJ noted, Dr. Tzetzo was familiar with the Commissioner's rules and regulations; he had the opportunity to review the entire record available at the time of her opinion; and the opinion was consistent with the overall medical record. Tr. 1404-05. *See* 20 C.F.R. §§ 404.1527(c)(4), (6).

The ALJ also reasonably gave significant weight to the opinions of consultative examiners Dr. Farmer and Susan Santarpia, Ph.D. ("Dr. Santarpia").  Tr. 1404-1405.  Dr. Santarpia performed a psychiatric consultative examination on April 30, 2014 (Tr. 439-442), and Dr. Farmer performed a psychiatric consultative examination on December 4, 2018 (Tr. 2216-19). Both examiners opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and appropriately deal with stress within normal limits. Tr. 441, 2218. Dr. Santarpia also opined that Plaintiff had a mild-to-moderate impairment in performing complex tasks and making appropriate decisions. Tr. 441. Dr. Farmer opined that Plaintiff had a mild limitation in using reason and judgment to make work-related decisions and a mild-to-moderate limitation interacting adequately with supervisors, coworkers, and the public. Tr. 2218.

In addition, Dr. Farmer found no evidence of limitation sustaining concentration or performing a task at a consistent pace or with sustaining an ordinary routine and regular attendance at work, as discussed above. Tr. 2218. The ALJ specifically gave significant weight to Dr. Farmer's opinion regarding interaction levels and pace, noting that Dr. Farmer has program knowledge, and his findings, diagnosis and limitations were consistent with other evidence. Tr. 1405. *See* 20 C.F.R. §§ 404.1527(c)(4), (6), 416.927(c)(4), (6). Based on the foregoing, the Court finds that substantial evidence supports the ALJ's mental RFC, and the Court finds no error.

Plaintiff's challenge to the ALJ's physical RFC finding is equally unavailing. Plaintiff argues that the ALJ failed to incorporate—or reconcile—Dr. Dave's opinion that Plaintiff could never lift more than 10 pounds. *See* ECF No. 7-1 at 17-19. First, Plaintiff wrongly contends that the ALJ gave [Dr. Dave's] opinion controlling weight. *See id*. at 17. To the contrary, the ALJ expressly stated that he gave Dr. Dave's opinion only "significant weight," which is consistent with the regulatory provision that only a treating source opinion may be given controlling weight.

10

20 C.F.R. §§ 404.1527(c)(2), 416927(c)(2). Moreover, the ALJ was not required to accept every portion of Dr. Dave's opinion.

As noted above, it is the role of the ALJ to resolve genuine conflicts in the medical evidence. *Veino*, 312 F.3d at 588. Here, there was a conflict between the opinion of consultative examiner Dr. Dave and the opinion of treating neurologist Dr. Samie. Dr. Dave opined that Plaintiff could never lift more than 10 pounds (Tr. 2209), and Dr. Samie opined that Plaintiff could lift and carry up to 20 pounds frequently and up to 50 pounds occasionally (Tr. 2288). Consistent with the Commissioner's regulations, the ALJ resolved this conflict in favor of the opinion from Plaintiff's treating source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating sources are generally given greater weight than non-treating sources).

Dr. Samie, who saw Plaintiff at the Buffalo Veterans Affairs Medical Center (where Plaintiff obtained the bulk of his medical care), had treated Plaintiff's right-hand tremor since October 2017. *See* Tr. 1801-1804, 1819-1822, 1861-1865, 2313-2315, 2326-2328. Accordingly, the ALJ gave great weight to the portion of Dr. Samie's opinion that discussed his upper extremity issues, noting that Dr. Samie was a treating physician who had seen Plaintiff on multiple occasions; he was familiar with Plaintiff's overall treatment record and conditions; and he was a specialist in the relevant area. Tr. 1405. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (generally, more weight is given to a treating source who can provide a detailed, longitudinal picture of a claimant's medical impairment); 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (generally, more weight is given to a specialist about medical issues related to his or her area of specialty).

Although Plaintiff complains that the ALJ did not expressly discount Dr. Dave's opinion that Plaintiff could never lift more than 10 pounds (see ECF No. 7-1 at 17-18), the decision nevertheless provides "an adequate basis for meaningful judicial review." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (residual functional capacity findings "need only 'afford[ ] an

11

adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013)). "Indeed, even if the ALJ was not as explicit in his reasoning on this issue as possible, '[a]n ALJ does not have to state on the record every reason justifying a decision,' nor is an ALJ 'required to discuss every piece of evidence submitted.'" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citing *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)).

Here, the ALJ specifically gave Dr. Samie's opinion "great weight in assessing the upper extremity issues." Tr. 1405. Dr. Samie's assessment of the upper extremity issues includes the limitation that Plaintiff could lift and carry up to 20 pounds frequently—a restriction that is entirely consistent with the exertional demands in the regulatory definition of light work. The RFC for light work is, therefore, rooted in Dr. Samie's lifting restriction, to which the ALJ expressly gave great weight. Further, there is no conflict between the additional limitations from Dr. Dave's opinion that the ALJ adopted, including the ability to continuously lift and carry up to 10 pounds and to occasionally carry up to 20 pounds, and Dr. Samie's opinion that Plaintiff could frequently lift and carry up to 20 pounds and occasionally lift up to 50 pounds. Thus, Plaintiff's argument that there is an unresolved conflict in the physical RFC is meritless.

With respect to Dr. Dave's lifting limitation, Plaintiff further argues that the ALJ did not probe into the alleged conflict between the hypothetical question posed to the VE and the exertional light jobs identified by the VE. *See* ECF No. 7-1 at 18-19. Upon review of the record, the Court finds no such conflict. The ALJ proposed a lengthy hypothetical that included all of the additional exertional, postural, and mental limitations that appear in Plaintiff's RFC. Tr. 1458-61. The VE then identified three jobs that such a person could perform: housekeeper or house cleaner, DOT2 code 323.687-014; ticket taker, DOT code 344.667-010; and car wash attendant, DOT code

315.667-010, all of which are categorized as exertional light work. Tr. 1461. The ALJ further probed into any apparent conflicts between the DOT and the VE's testimony, including overhead reaching requirements and social interaction levels, and the VE testified that she based her testimony on her training and experience, including having performed the jobs herself. Tr. 1462-64. Plaintiff contends that the ALJ should have asked the VE about the apparent conflict in lifting, but, as stated above, there is no such conflict. Because substantial evidence supports the RFC as relayed in the hypothetical, the ALJ was entitled to rely on the VE's opinion at step five. *See Dumas v. Schweiker*, 712 F. 2d 1545, 1553-54 (2d Cir. 1983).

Furthermore, as discussed above, the ALJ reasonably gave great weight to Dr. Samie's assessment of Plaintiff's upper extremities and concluded that Plaintiff could perform the regulatory demands of light work, including lifting and carrying up to 20 pounds occasionally. The ALJ did not include Dr. Dave's limitation that Plaintiff could never lift more than 10 pounds, and he was under no obligation to do so. Accordingly, the Court finds no error.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet*, 523 F. App'x at 59 ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault*, 683 F.3d at 448 ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe*, 676 F.

App'x at 7 (quoting *Veino*, 312 F.3d at 588) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the conflicts in the medical opinion evidence, and his finding that Plaintiff retained the functional ability to perform light work with the noted limitations, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE